# McKinney, Appellant, v. Pennsylvania Railroad Company.

*Railroads—Private grade crossing—Public road—Merger of private road in public road—Extinguishment of private road—Estoppel.*

Where an owner of a private road and grade crossing over a railroad of .five tracks with 300 trains passing daily joins in proceedings to establish and lay out a public road, embracing the private right of way and grade crossing within its limits, and the enjoyment of which public road cannot be separated from the enjoyment of the private right of way and grade crossing, the conduct of such owner may be regarded as having operated to have extinguished his easement altogether; and if the public road is thereafter vacated by an arrangement between the public authorities and the railroad company, and an underground passageway substituted therefor, the owner and those claiming by descent from him have no standing to maintain the continued existence of the private road and grade crossing.

In such a case, where a son of the owner testifies that his father's name had been signed to the petition for the public road by another son, who had done some business for the father, and the record shows that due notice had been given to the landowners, and that the jury of view had tried to settle with them by securing releases, and there is nothing to show that the owner objected to the proceedings or repudiated them, the court is justified in finding that the owner either participated in the proceedings or acquiesced in them, and that he was estopped thereafter from claiming the continued existence of the private right of way over the railroad.

Grade crossings are constant perils not only to those using them, but to those upon trains passing over them, liable to be wrecked by collisions. Such crossings whether private or public, ought in all cases to be done away with, and equity will protect a right to use them only when such right is so clear that a chancellor must recognize it. No class of cases calls more strongly for the application of the rule that all doubtful questions must be resolved against an injunction.

Argued May 5, 1908. Appeal, No. 35, Oct. T., 1908, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., March Term, 1907, No. 922, dismissing bill in equity in case of Catharine McKinney et al. v. The Pennsylvania Railroad Company. Before Fell, Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Bill in equity for an injunction.   Before CARNAHAN, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Donald Thompson* and *George H. Calvert*, of *Blakely & Calvert*, with them *John Rebman, Jr.*, for appellants.—In the case at bar, the railroad, as part payment for their grant, expressly agreed to furnish a crossing for Robert McKinney and his heirs, and a reference to the deed shows that this was mentioned as a part consideration thereof.   If they now wish to rescind their agreement and obstruct the crossing, then they are remitted to their right of eminent domain, and must proceed in that manner, giving due compensation to the landowner for his property taken : Semple v. R. R. Co., 172 Pa. 369 ; Daley v. Iselin, 218 Pa. 515 ; Hall v. Ry. Co., 168 Pa. 64 ; Kraeer v. R. R. Co., 218 Pa. 569 ; U. S. Pipe Line Co. v. R. R. Co., 42 L. R. A. 572 ; Morrison v. Ry. Co., 117 Iowa, 587 (91 N. W. Repr. 793); Mt. Pleasant Coal Co. v. R. R. Co., 200 Pa. 434 ; Neff v. Penna. R. R. Co., 202 Pa. 371 ; Kaul v. Weed, 203 Pa. 586.

The location of the public road over the site of the crossing did not affect the complainants' private right therein : Hays v. Lynn, 7 Watts, 524 ; Moore v. Patterson, 28 Pa. 505 ; American Underwriters' Assn. v. George, 97 Pa. 238 ; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579 ; Hays v. Hays, 179 Pa. 277.

The doctrine of extinguishment of the private right of way by estoppel and increase of burden has no application in this case : Wimbledon, etc., Commons Conservators v. Dixon, L. R. 1 Ch. Div. 366 ; Baxendale v. McMurray, L. R. 2 Ch. App. Cases, 790 ; Griffin's App., 109 Pa. 150 ; Weiss v. South Bethlehem Boro., 136 Pa. 294 ; Frankford, etc., Pass. Ry. Co. v. Phila., 175 Pa. 120 ; Com. v. R. R. Co., 135 Pa. 256 ; Bellefield Ave., 2 Pa. Superior Ct. 148 ; Brooklyn Street, 118 Pa. 640 ; Forbes Street, 70 Pa. 125.

The construction of another means of crossing, even with the knowledge of the heirs of Robert McKinney, and no protest on their part, did not affect their right to the private way :

Dovaston v. Payne, 2 Smith's Leading Cases, *142; Melon Street, 182 Pa. 397; Paul v. Carver, 24 Pa. 207; Carroll v. Asbury, 28 Pa. Superior Ct. 354; Black v. Ry. Co., 34 Pa. Superior Ct. 416; Central Trust Co. v. Hennen, 90 Fed. Repr. 593; In re Board of Education, 24 App. Div. 117; Mitchell v. Einstein, 105 App. Div. 413.

The dangers of a grade crossing have no force in the determination of the issue presented here: Kenny v. Ry. Co., 208 Pa. 30.

*James S. Crawford*, with him *Patterson, Sterrett & Acheson*, for appellee.—The plaintiffs have no right, title or interest in the crossing: Huff v. McCauley, 53 Pa. 206.

The right or privilege, if any, in favor of Robert McKinney, by reason of the deed, agreement and actual construction of the crossing by the railroad company, was, as to the land not conveyed by him, not more than a personal revocable license, which would have died with him, had it not become extinguished in his lifetime: Baldwin v. Taylor, 166 Pa. 507.

Whatever privilege or license Robert McKinney did have to cross the land not granted by him, as well as any easement he may have had over the land granted, was merged, abandoned and extinguished after the road proceedings at No. 3, September sessions, 1884: Burton's App., 93 Pa. 214; Louchheim v. Davies, 148 Pa. 499; Darlington v. Painter, 7 Pa. 473; Mussey v. Union Wharf Proprietors, 41 Me. 34; Hancock v. Wentworth, 46 Mass. 446; Ballard v. Butler, 30 Me. 94.

Until plaintiffs' rights are established at law, they are not entitled to invoke relief in equity: Rhea v. Forsyth, 37 Pa. 503; King v. McCully, 38 Pa. 76; Washburn's App., 105 Pa. 480; Cortelyou's App., 102 Pa. 576; Backus's App., 58 Pa. 186; Ballou v. March, 133 Pa. 64; Grubb's App., 90 Pa. 228.

Plaintiffs, having stood by in silence while the defendant expended large sums of money for the very purpose of eliminating this crossing, are now estopped: Morgan v. R. R. Co., 96 U. S. 716; Chapman v. Chapman, 59 Pa. 214; Redmond v. Excelsior Sav. Fund & Loan Assn., 194 Pa. 643; Arnold v. Cornman, 50 Pa. 361.

Where more harm will result to the defendant, and to the

public, than benefit to the plaintiff, a chancellor will not interfere: Jones v. R. R. Co., 11 Pa. Superior Ct. 202; Keeling v. Ry. Co., 205 Pa. 31; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Heilman v. Ry. Co., 175 Pa. 188; Bryner v. Bridge Co., 190 Pa. 617.

OPINION BY MR. JUSTICE BROWN, June 2, 1908:

This bill was filed to enjoin the appellee from closing an alleged private grade crossing. The court below in its findings of fact none of which are excepted to by the appellants, goes back to the situation in the lifetime of William McKinney, their grandfather, who, in 1850, conveyed to the appellee a strip of land four rods in width for the construction of its railroad. Over this strip there was at that time a private road laid out by McKinney, and, after the construction of the railroad, it was kept open with the consent of the appellee for his use as a means of access to and egress from his property, consisting of several hundred acres of land. In 1851 the appellee constructed a crossing at grade on the line of this private road over its track on the land purchased by it from McKinney, and maintained the same at its own cost and expense continuously until November 7, 1906. From 1855 until November, 1906, this private road and crossing were continually used and traveled over by the general public. William McKinney died in July, 1860. All of his lands were devised to his sons, John and Robert, and the latter, the father of the appellants, became, by deed in proceedings in partition, the owner in fee of the lands adjoining the strip conveyed by his father to the railroad company. On June 12, 1882, Robert conveyed in fee to the appellee a strip of land on the north side of its railroad about 100 feet in width, adjoining that previously conveyed to it by his father, and containing 5.336 acres. In his deed to the appellee he reserved to himself, " his heirs and assigns forever, the right to have, keep open, use and enjoy a wagon road over and across the Pennsylvania railroad and the premises hereby granted, . . . . the said road crossing hereby reserved to be constructed by the said railroad company at their own expense, at the grade of the said railroad as constructed." On the same day the appellee agreed in writing, in consideration of the aforesaid deed to it and in view of the provision or reservation

contained therein in reference to the wagon road and railroad crossing, that it would "construct a road, of the width of fifteen feet, in a good and workmanlike manner, of proper materials, on the location and in the course designated by red dotted lines on the plan hereto attached and made part hereof." McKinney accepted the road or crossing after it had been so constructed by the railroad company and agreed that his acceptance of it should be " a full and ample release" from him to the appellee from all liability by reason of the building to the said road. This road is the road mentioned and provided for in his deed of June 12, 1882, and is the crossing that was in use at the time the railroad was built through the property. In 1886, in pursuance of proceedings instituted in the court of quarter sessions of Allegheny county at September Term, 1884, a public road in Wilkins township, now part of the borough of North Braddock, was laid out and opened on the location of the above-mentioned road, wholly including the same and the railroad crossing at grade within its lines. The records of the court of quarter sessions show that the petition for this public road was filed September 27, 1884, and on it appear the names of W. J. McKinney and Robert McKinney as signers thereof. The records further show that the appellee opposed this proceeding. W. J. McKinney was a son of Robert McKinney, and at the hearing of this case in the court below on June 7, 1907, Harvey McKinney, one of the complainants, testified on cross-examination that the name "Robert McKinney," appearing on the petition filed in the court of quarter sessions for the laying out of the road, was in the handwriting of W. J. McKinney, adding that his brother William had transacted some business for his father. Robert McKinney died July 18, 1887, leaving to survive him a widow and children, to whom, under the intestate laws, his real estate descended, and they are the plaintiffs in this bill. In November, 1903, the borough of North Braddock, by an ordinance duly passed and approved, entered into a contract with the appellee by which the latter agreed to construct and forever maintain underneath its tracks a passageway for the use of the public, twenty-five feet wide and properly arched, to be located at Dooker's Hollow street, in said borough. It also agreed to construct a sewer underneath said arch to connect with a sewer

then in process of construction by the said borough. All of these improvements were to be made for the use of the public and at the cost of the railroad company, in consideration of which the borough agreed to vacate 352 feet of the public road or highway laid out by the court of quarter sessions as aforesaid, including the said grade crossing of the highway over the roadbed of the appellee. The appellee made the improvements agreed upon, with the exception of grading a street, at a cost of more than $76,000 for the stone arch alone, and the road or underground passageway was thrown open to the public. Thereupon, on November 6, 1906, the borough passed an ordinance vacating the said public road and grade crossing, and this ordinance was approved on the following day. The railroad company immediately closed the part of the road so vacated, tore up the planks at the crossing and the same has remained closed ever since, the company refusing to restore and reopen it. When the crossing was first made in 1851 there was but one railroad track; when it was closed it crossed four main tracks and a siding, and 174 passenger trains and 126 freight trains passed over it daily except on Sunday. The foregoing are the material facts as found by the court, and upon which it concluded that the appellants' bill ought to be dismissed.

While every private right of the appellants will be protected from encroachment by the appellee, the right which, in this proceeding, they allege is being interfered with must clearly appear. Its existence must be free from all doubt. What we are asked to protect is an alleged private right of way upon the roadbed of a railroad company over which 300 trains pass almost daily. The settled policy of the state is humanely against such a crossing, and we shall not be astute to discover error in the legal conclusion of the learned court, following unchallenged findings of fact, that the ancestor of the appellants had parted with the right which they now claim as his heirs.

The fee over which Robert McKinney's right of way passed was in the appellee by conveyances from him and his father. It resisted the laying out of the public road, which embraced the right of way within its limits. Without the consent of the appellee, and in the face of its opposition, the public road

was laid out, increasing the servitude upon its land, and if Robert McKinney co-operated in the effort for the increase of the servitude, the enjoyment of which could not be separated from that of his private right of way, such conduct on his part may be regarded as having operated to extinguish his easement altogether: Washburn on Easements & Servitudes (2d ed.), 627.

If Robert McKinney had signed his name to the petition for the appointment of viewers to lay out the public road and had not objected to its being laid out over his private right of way, doubt could hardly be entertained that he intended that right to be extinguished whenever the public road was actually opened. His name appeared upon the petition, and it was presumptively his signature. The court acted upon it as such in appointing the viewers. A son, one of the appellants, testified that it was in the handwriting of another son, William, now deceased, but under an admission that William had transacted some business for his father. The statement is made by counsel for appellants in their brief of argument that there is not a word in the record to show that Robert McKinney had the least knowledge of the proceeding for the laying out of the public road. This is inconsistent with what appears from the records. The viewers reported that they had met for the discharge of their duties, "pursuant to legal notice." Presumptively this means that Robert McKinney had been notified of their meeting. That he knew they had been appointed and that the road as laid out by them would embrace within its limits his private right of way conclusively appear from a part of their report, the correctness of which the appellants have not questioned. It is as follows: "The undersigned further report that they endeavored to procure from owners of land over which the road passes releases in writing from all claims to damages that may arise from opening the same, and having failed to procure such releases, we report that the benefits to be derived by the landowners from said road passing through their land will exceed the damages, and we annex a plot or draft of road laid out stating the courses and distances and noticing briefly the improvements through which the same passes." Robert Mckinney was one of the owners of the land over which the road passed, and from him,

according to the report of the viewers, they tried to procure a release in writing from all claims to damages. He, therefore, knew exactly what had been done. Under this state of facts it cannot be said that the court below erred in reaching the following legal conclusions: "4. The signing of Robert McKinney's name to the petition to the court of quarter sessions, at No. 3, September sessions, 1884, by a son who did 'some' business for him, cannot but be treated as the act of Robert McKinney himself, in view of the facts, that the court so considered it, that the said road and crossing became a public road and crossing in virtue of said court proceeding, which was based on said petition, that Robert McKinney himself never repudiated it, although he lived more than six months after the order of the court making the road and crossing public property; that no one since, until the hearing in this case, has ever questioned it, and that Harvey McKinney, his son, who now testifies, simply says that the handwriting is not that of his father, but of W. J. McKinney, who did 'some' business for his father. We are of opinion that the signing of Robert McKinney's name to said petition was acquiesced in by, and should be treated as, the act of Robert McKinney.

"5. By participating in an act, the purpose and effect of which were to increase the burden of the railroad company, by forcing upon it the responsibility of a public crossing at grade, instead of a mere private crossing at grade, Robert McKinney renounced and abandoned his private easement in said road and crossing and the same was thereby extinguished. There is no question of damages or compensation.

"6. The Pennsylvania Railroad Company, in making its contract with the borough of North Braddock for the building of the viaduct and the vacation of the public road and crossing, had good reason to rely upon the proceeding in the court of quarter sessions, at No. 3, September sessions, 1884, as evidence of Robert McKinney's abandonment of his private easement in said road and crossing; and the heirs of Robert McKinney should not, at this late day, be heard to deny it.

"7. The vacation of the public road and Bessemer Grade crossing by the Borough of North Braddock, by ordinance of November 6, 1906, approved by the Burgess, November 7,

1906, was an abandonment of the road and crossing by the proper public authorities, and there being no private easement therein, the railroad company was within its rights when it closed the same as it did."

The most that can be said of appellants' claim to an existing private right of way over the roadbed of the appellee, is that it is involved in doubt, and for this reason alone the bill ought to have been dismissed. Grade crossings are constant perils not only to those using them, but to those upon trains passing over them, liable to be wrecked by collisions. Such crossings, whether private or public, ought in all cases to be done away with, and equity will protect a right to use them only when such right is so clear that a chancellor must recognize it. No class of cases calls more strongly for the application of the rule that all doubtful questions must be resolved against an injunction.

Appeal dismissed and decree affirmed at appellants' costs.