# Seidler et al. *v.* Waln et ux., Appellants.

*Easement—Private right-of-way—Deeds—Reservations—Way in gross — Way appurtenant — Abandonment — Increase of traffic — Equity—Injunction—Findings of fact—Appeal.*

1. A right-of-way granted to the owners, tenants and occupiers for the time being of certain land, is an easement appurtenant to the land, which includes not only the right to use the way by the

respective owners for the time being, but also by their families, and others who, through permission of such owners, may desire to visit their homes for any lawful purpose.

2. The court below stated grantees' (plaintiffs') rights too broadly when, in answer to one of plaintiffs' requests, it was said, as a conclusion of law, that plaintiffs, their families, servants, visitors "or others to whom they may grant permission," are entitled to the use of the way.

3. As a rule it seems that no unlawful additional burden is imposed on the lands of a servient estate by an increased number of persons using an unlimited right-of-way to which the land is subject; and so, if such a right is granted to a person who afterwards erects tenement houses on his land, the way may be used by his tenants.

4. On a bill in equity to restrain the obstruction of a private right-of-way, the appellate court will not reverse a finding of fact by the chancellor, based on sufficient evidence, to the effect that neither plaintiffs, nor their predecessors in title, participated in any endeavor, the purpose and effect of which was to increase the burden on defendants' servient estate, of a character and extent to justify a finding that the former had renounced, abandoned or extinguished their rights of easement.

5. On a bill in equity to enjoin the closing of a certain "paved carriageway" it appeared that, in 1887, the owner of a tract of land, lying between public roads north and south, conveyed the southern portion thereof by a deed in which he reserved to himself, "his heirs and assigns, being the owners, tenants and occupiers for the time being of the adjoining piece of land to the northward," the "free use, right, liberty and privilege" of the carriageway in question, running along the westernmost end of the land from the southern road to the northern piece of land, "for all purposes of ingress, egress and regress as fully and effectually as though said paved carriageway was a public highway." The reservation further stated that the carriageway was to be enjoyed by the grantor, "his heirs and assigns, being the owners, tenants and occupiers for the time being" of the lands to the north, "in common with the said [grantee], his heirs and assigns, being the owners, tenants and occupiers for the time being" of the balance of the tract. The grantee in this deed conveyed the western portion of the land, on which the southern half of the carriageway was laid out, to one of defendants (the wife), by a deed with the same reservation as to the carriageway as in the deed to himself. For some twenty-six years this way was used by the original owner, his grantee, and defendants, husband and wife, for family purposes. The original

owner then granted to a contractor a portion of his remaining land immediately north of the land previously conveyed, giving to him the same use of the carriageway which he had reserved in the previous deed, and by special covenant extinguished the right of passage over the carriageway for himself, his heirs and future owners of the remainder of the original tract lying to the north. The contractor laid out his land in lots, and opened through it from east to west a private road 33 feet wide extending from a public road, on the east, to the western boundary of his land, at which point the private road connected with the paved carriageway. At the eastern end of this road there was placed, prior to the filing of the bill, a private-road "warning sign." Plaintiffs in the bill were the grantees of the contractor, to whom the latter conveyed in their respective deeds the privilege of the paved carriageway, and reserved for the benefit of the balance of his land a like right. After the occupancy of the lots conveyed to plaintiffs, the use of the carriageway increased, despite the fact that the way was cut off from the easement of the original tract to the north, and had been lessened by some of the traffic going through the 33-foot road to the public highway on the east. Defendants threatened to build a barrier at the northern entrance to the way. The bill was filed to prevent this. The chancellor found as a fact that, since the conveyance to the contractor, plaintiffs and their families had used the way to reach the railroad station and stores; that it had also been used by their friends, and tradespeople who had business with them; and that it had also been used by others, but that this latter use had not been specially encouraged by plaintiffs, and was not of a character materially to injure defendants. *Held:*

(a) That the right-of-way over the road might be used by those who owned or occupied any part of the dominant tenement, for any purpose for which it might be legitimately applied, and that only those who might properly be regarded as trespassers could be excluded.

(b) That the use or attempted use by those who had no right or authority so to do, gave defendants no warrant or license to close the way or interfere with the lawful and legitimate use by plaintiffs.

(c) That the court did not err in entering a decree enjoining the defendants from closing the carriageway, or in any manner interfering with plaintiffs in their use thereof in accordance with their deeds, and that plaintiffs and defendants should take such steps as would give notice to the public that the way was a private road.

6. In such a case it cannot tenably be maintained that the original owner retained for himself and his assigns, an easement in

gross over the road, which could be granted by his or their "permission," to whomsoever he or they pleased. The words of the reservation, "owners, tenants and occupiers," were evidently intended for the very purpose of showing that the easement was not in gross, but appurtenant to the land.

7. It was not error for the court to find as a matter of law that when the easement was created, the parties must have anticipated that the original property would not always remain in its present condition, but might be improved in the future so as to increase the use of the carriageway.

Argued January 6, 1920. Appeal, No. 318, Jan. T., 1919, by defendants, from decree of C. P. No. 2, Philadelphia Co., Dec. T., 1917, No. 1058, on bill in equity in case of George J. Siedler, Frances Rotan Sargent, Charles S. Starr, William D. Edson and Louise Burpee Sawtelle v. Jacob S. Waln and Lydia L. Waln, his wife. Before Brown, C. J., Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Affirmed.

Bill in equity for injunction. Before Rogers, J.

The facts appear by the opinion of the Supreme Court.

The following plans show the situation of the properties and the road in controversy (see pages 365 and 366):

Mahan conveyed to plaintiffs lots fronting on both sides of the 33-foot road shown in plan on page 366.

The court entered a decree in favor of plaintiffs, as set forth in the opinion of the Supreme Court. Defendants appealed.

*Errors assigned* were dismissal of exceptions to findings of fact and law and the decree of the court.

*William A. Schnader,* with him *George Douglass Hay* and *John Lewis Evans,* for appellants.—The intention of the parties was to limit the reservation so that it would not benefit the "assigns" of Sylvester generally,

PLAN OF LAND PRIOR TO MAHAN DEED.

PLAN OF LAND AFTER MAHAN DEED.

but only the persons included within the words of limitation and definition used, namely, "being the owners, tenants and occupiers for the time being of the adjoining piece of land to the northward."

Mahan's act in opening for public use the 33-foot road and connecting it with defendant's carriageway without preventing the public from using the two ways as a through highway from Glyn-Wynne avenue to Gray's lane so increased the burden over defendant's carriageway and changed the character of the user as to amount to an extinguishment of Mahan's easement over defend-

ant's carriageway. Thereafter Mahan had no right of easement which he could convey to plaintiffs: McKinney v. Penna. R. R. Co., 222 Pa. 48; Riefler Sons v. Wayne Storage Water Power Co., 232 Pa. 282; Schmoele v. Betz, 212 Pa. 32; Darlington v. Painter, 7 Pa. 473; Jamison v. M'Credy, 5 W. & S. 129; Coleman's App., 62 Pa. 252; Allen v. Scheib, 257 Pa. 6; Gowen v. Phila. Exchange Co., 5 W. & S. 141.

Under the circumstances, plaintiffs must be regarded as being, in part at least, responsible for the condition about which defendants properly complained and not having taken any effective steps to prevent the illegal use of defendants' carriageway by the public, plaintiffs have no right to ask equitable relief. They have not themselves done equity and therefore cannot ask relief of equity: McCullagh v. Broad Exchange Co., 101 App. Div. (N. Y.) 566; Crosland v. Pottsville Borough, 126 Pa. 511.

*Thomas Raeburn White,* for appellees.—Not only the plaintiffs, but their families, servants, guests, tradesmen and anyone lawfully visiting them are entitled to use the way: Gunson v. Healy, 100 Pa. 42; Benner v. Junker, 190 Pa. 423; Harper v. Greenmount Cem. Co., 15 W. N. C. 172; Com. v. Burford, 225 Pa. 93; Citizens Electric Co. v. Davis, 44 Pa. Superior Ct. 138.

The opening of the 33-foot road did not extinguish the easement.

OPINION BY MR. JUSTICE MOSCHZISKER, February 23, 1920:

The plaintiffs filed a bill in equity praying defendants be restrained from obstructing, closing or interfering with the former's use of a certain private road, or "paved carriageway"; after final hearing, on bill, answer and proofs, the injunction was granted; defendants have appealed.

Prior to March 1, 1887, Frederick Sylvester owned a tract of land at Haverford, Pa., consisting of about seven acres, bounded on the south by Gray's lane, on the east by Glyn-Wynne avenue, on the north by Booth's lane, and on the west by lands of one Dodson; the "paved carriageway" here involved connected the Sylvester residence with the two lanes above mentioned,—the southern half of this private road, the part now in controversy, extending along the extreme western boundary of the tract.

On the date just stated, Sylvester conveyed the Gray's lane front of his land, some 246 feet in depth, to Rowland Evans; the latter forthwith deeded the western portion thereof, a little over one-third of his purchase, to the defendant, Lydia L. Waln.

In both the Evans and Waln deeds, there is reserved to "Frederick Sylvester, his heirs and assigns,—being the owners, tenants and occupiers for the time being of the adjoining piece of land to the northward,"—the "free use, right, liberty and privilege" of the carriageway in question, 16 feet wide, running along the westernmost end of the land thereby granted, "from said Gray's lane to said adjoining piece of land to the northward...... for all purposes of ingress, egress and regress as fully and effectually as though said paved carriageway was a public highway."

The above recited reservation states that the carriageway is to be enjoyed by "Frederick Sylvester, his heirs and assigns, being the owners, tenants and occupiers for the time being" of the lands to the north, "in common with" the grantee, his heirs and assigns, "being the owners, tenants and occupiers for the time being" of the balance of the tract.

From the date of his conveyance in 1887, until March, 1913, Sylvester remained the owner of the land north of the plot conveyed to Evans, and, during this period, the paved carriageway was used only for family purposes, by the occupants of the Sylvester and Evans, or Waln,

properties, the road being marked at both the northern and southern entrances thereto by gateways.

March 27, 1913, Sylvester conveyed to one Mahan a portion of the original tract immediately north of the premises theretofore deeded to Evans, giving and granting to Mahan the same use of the paved carriageway which previously had been reserved in the deed to Evans; but Sylvester, by special covenant, then and there extinguished the right of passage, possessed by himself, his heirs and assigns, and all future owners and occupiers of the remainder of the original tract (being that portion lying north of the part conveyed to Mahan), over the roadway leading southward therefrom to Gray's lane, being the portion of the paved carriageway in question.

The land conveyed to Mahan runs clear across the Sylvester tract from east to west, more than 400 feet in width. Mahan opened through the center of this property a private road 33 feet wide, extending from Glyn-Wynne avenue on the east to the western boundary line of the tract, at which point it connected with the paved carriageway. Prior to plaintiff's bill, there was erected on the Glyn-Wynne avenue entrance to this new road a sign, 41 inches long by 36½ inches high, reading as follows: "Private Road. Persons not having business with residents of this property are forbidden to use this road. Any violation of this notice will be prosecuted as a trespass."

Mahan laid out building lots on either side of the 33-foot road, some of which were conveyed by him to plaintiffs; in each instance the deed granted the privilege of the paved carriageway and reserved, for the benefit of the balance of the land, a like right.

From the time the Mahan land was thus divided into building lots, and occupied by several homes, the use of the carriageway increased; and this, despite the fact that such way was legally and physically shut off from the easement of the remainder of the Sylvester tract to

the north, and its use had been (as stated by the chancellor in his findings) also "lessened by the fact that some of the traffic, to and from plaintiff's properties [which had a right to use the paved carriageway], enters and leaves by way of Glyn-Wynne avenue."

The defendants, however, claiming that the opening of the 33-foot road practically makes a public thoroughfare from Glyn-Wynne avenue to the paved carriageway, and that this has so enlarged the use of the latter as to constitute an abuse of the privilege therein possessed by plaintiffs, threatened to erect a permanent barrier at the northern entrance to the way, and thus exclude any and all future use thereof by others than the occupants of the Waln lot. The present bill was filed to prevent the erection of this barrier.

The chancellor finds as a fact that the paved carriageway has been employed since 1913, "by plaintiffs and their families, in walking and riding over it to and from the railroad station and stores in Haverford"; that "their friends use it by vehicles, and tradespeople, who have business with the plaintiffs, also use it with their wagons and automobiles," adding, "undoubtedly it is used to some extent by people other than those to whom the privilege is given by the reservation contained in the deeds," but that this latter use is merely incidental (not specially encouraged by plaintiffs), and not of a character materially to injure defendants.

The court below concluded as a matter of law that the right-of-way over the road in question might be "used and enjoyed by those who owned or occupied any part of the dominant tenement, for any purpose for which it may from time to time be legitimately applied," that "only those who may be properly regarded as trespassers......can be excluded," and that its present or attempted use by those "who have no right or authority so to do, gives defendants no warrant or license to close the way or interfere with the lawful and legitimate use thereof by plaintiffs."

On these findings and conclusions, defendants are enjoined from closing the carriageway or in any manner "interfering with plaintiffs in their use" thereof "in accordance with their rights as set forth in their respective deeds." The decree further states: "Plaintiffs and defendants are to take such steps as will give notice to the public that the paved carriageway is a private road." We see no error in the decree as entered.

The court below, in answer to one of plaintiffs' requests, states a conclusion of law to the effect that plaintiffs, their families, servants, visitors "or others to whom they may grant permission," are entitled to the use of the way in controversy; this conclusion is justly complained of as too broadly stating plaintiffs' rights.

While we cannot agree with the suggestion of defendants that the words of the original reservation restrict the use of the carriageway to "the owners, tenants and occupiers for the time being" of the Sylvester tract, no more can it tenably be maintained that Sylvester retained for himself and his assigns, an easement in gross over the road, which could be granted, by his or their "permission," to whomsoever he or they pleased. The words of the reservation, "owners, tenants and occupiers," were evidently intended for the very purpose of showing that the easement was not in gross, but appurtenant to the land (Jamison v. M'Credy, 5 W. & S. 129, 141) ; and, being so appurtenant, of course the privilege includes not only the right to use the road by the respective owners for the time being of the several pieces of the original tract, but also by their families, and others who, through permission of such owners, may desire to visit their homes for any lawful purpose; this marks the extent of the easement: Com. v. Burford, 225 Pa. 93, 99; Gunson v. Healy, 100 Pa. 42, 46.

The court below did not err in stating, as a matter of law, that, when the easement was created, the parties must have anticipated the Sylvester property would not always remain in its then present condition, but might

be improved in the future so as to increase the use of the carriageway: Benner v. Junker, 190 Pa. 423, 429; 9 R. C. L. 787. "As a rule, it seems that no unlawful additional burden is imposed on the lands of a servient estate by an increased number of persons using an unlimited right-of-way to which the land is subject; and so, if such a right is granted to a person who afterwards erects tenement houses on his land, the way may be used by his tenants": 9 R. C. L. 791, section 47.

We cannot agree that the facts of this case show plaintiffs, or their predecessors in title, to have participated in any endeavor, the purpose and effect of which was to increase the burden on defendants' servient estate, of a character and extent to justify a finding that the former had renounced, abandoned, or extinguished their rights of easement. While "it is difficult, if not impossible, to lay down a clear and definite rule to determine what may be construed a reasonable and proper use [of an easement], as distinguished from an unreasonable and improper one, and such questions must, of necessity, be usually left to the determination of a jury or the trial court, as questions of fact" (9 R. C. L. 787), yet here the chancellor has found the facts against defendants; and we are not convinced of reversible error in that regard.

The case of McKinney v. Penna. R. R. Co., 222 Pa. 48, in no sense governs the present one, for the facts are materially different. In the McKinney case the complainant's right in the alleged private way, as a private way, had been extinguished by his active participation in legal proceedings whereby the way was turned into a public road; after this statement of fact we need add nothing else in order to distinguish the two cases.

The many authorities cited by counsel on both sides have been examined and considered, but we do not feel that any useful purpose would be served by specially mentioning others than those already referred to; nor is it necessary to pass specifically upon each of the twenty-two assignments of error.

The decree is affirmed; costs to be divided.