HENRY A. BREHM *v.* STATE ROADS COMMISSION.
[No. 35, January Term, 1939.]

412

*Decided April 27th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Vernon Cook* and *George Ross Veazey,* for the appellant.

*Thomas F. Jenifer, Special Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the State Roads Commission.

*O. Bowie Duckett, Jr.,* with whom was *Edward E. Hargest, Jr.,* on the brief, for the Pennsylvania Railroad.

BOND, C. J., delivered the opinion of the Court.

The State Roads Commission is empowered by the Act of 1931, chapter 539 (Code [Supp. 1935], art. 89B, sec. 13) to abolish a railroad grade crossing of a state highway whenever it shall appear to the commission to be dangerous to public safety or to impede public travel; and to do so it may carry a highway over or under a railroad at the site, or may vacate, relocate or change the lines, width, or direction of the highway, and open a new highway in its place. And there is a second grant of power in an Act of 1935, chapter 537 (Code [Supp. 1935], art. 89B, sec. 32A): "to build and improve roads and bridges, including any and all projects for elimination of highway hazards existing or found to exist at crossings of highways with railroads * * * with funds received from the United States Government or any agency thereof * * * and for this purpose the State Roads Commission may exercise any of the powers conferred upon it by this Article or elsewhere."

The appellant, by a bill in equity below, complained that the removal of a railroad crossing on a road by which he passed from his farm in Harford County to the main highway between Baltimore and Philadelphia, wrongfully cut and blocked that road, and deprived him of his convenient, lawful access to the main highway. He was given a new outlet crossing the railroad by a bridge, but he complained that it was much farther to one side of his farm and would leave him at an increased distance from places on the other side, that the bridge is too light for some of his farm traffic, and that there was fraud and illegality in proceedings by which the elimination of the crossing was placed at the command of the State Roads

Commission, and by which the elimination was accomplished. The relief sought was a permanent injunction against the closing of the old road to the grade crossing and on to the main highway, the Philadelphia Road.

The farm is one of 521 acres, on the shore of the Bay, south of Havre de Grace, and extends inland to the railroad right of way. From time immemorial there has been a road, until recently a private road, serving the Brehm farm and two farms to the south of it on the peninsula formed by Swan Creek. Running north from the lower farms and over the Brehm farm to the northwest, it has reached the railroad at Oakington Station, crossed, and then extended a short distance over the land of a neighbor to the Philadelphia Road. The railroad company regularly maintained gates and watchmen at the crossing. The Philadelphia Road has been under reconstruction, with the aid of the Federal Works Progress Administration, and some grade crossings on it have been removed. In the substitution in this instance of an outlet to the south, over land of a neighboring owner, a bridge of the old Philadelphia Road, 4306 feet to the southwest of the grade crossing, has been utilized, and the result of the diversion to it is that travelers to the north from the Brehm farm have a mile and a half added to their distance. The distance to the south is shortened.

The mere increase of distance for travel in the one direction, the proceedings being proper, would not constitute a taking of the landowner's property for public use, and so require compensation to be paid for the taking. Const., art. 3, sec. 40. Extensions of meaning of the words "taken for public use" to include incidental damage or injury, are adopted in this state only in the restricted situations described in recent cases, and, as has been stated, cannot be enlarged without making "an extension of the constitutional prohibition amounting to an amendment such as has been adopted in many other states, but which the people of this state have not yet seen fit to make." *Krebs v. State Roads Commission*, 160 Md. 584, 594, 154 A. 131, 135; *Ragan v. Susquehanna*

*Power Co.,* 157 Md. 521, 146 A. 758; *Baltimore v. Himmelfarb,* 172 Md. 628, 630, 192 A. 595; *Balto. & O. R. Co. v. Gilmor,* 125 Md. 610, 94 A. 200.

The proceedings complained of were these. On November 12th, 1935, the chief engineer of the railroad company wrote the engineer of the State Roads Commission that in connection with grade crossings that had been on statements of their two engineering departments for possible elimination by the use of government funds, the company had often called attention to the crossing at Oakington, and it was urged that the elimination of that crossing be now carried forward. Emphasis is laid on a supposed initiation of the proposal by the company, but if it did initiate it, and would profit by the elimination, the project would not by reason of those facts be any the less a public one, within the authority of the State for public improvements. "It is perhaps rare for an application to be made to the county commissioners of a county to open, alter, or close a road, excepting when one or more persons are specially interested in having it done." *Baltimore v. Brengle,* 116 Md. 342, 348, 81 A. 677, 680; *Jenkins v. Riggs,* 100 Md. 427, 59 A. 758; *Dobler v. Baltimore,* 151 Md. 154, 166, 134 A. 201. Section 18 of article 89B provides that: "The State Roads Commission may proceed with respect to any such crossing upon its own motion, or upon the petition of any railroad company or companies whose tracks cross or are crossed at grade."

From the time of the letter from the railroad engineer the project went forward. Two days later, on November 14th, 1935, the engineer of the Roads Commission wrote the County Commissioners of Harford County that he would recommend to the Government and the commission that it build the new road to eliminate hazards on grade crossings if the county commissioners would close the grade crossing as a public road and turn over to the state commission the right of way for the new road; and to this the county commissioners, in reply, assented, and plans and estimates for removal of the crossing were drawn accordingly. On January 23rd, 1936, Mr. Brehm,

by his counsel, wrote the state commission a letter protesting against a reported plan to close the private road to his farm. In this there may have been a misunderstanding of the project, one that still prevails to an extent, for complaint is still made against the closing of the road across Mr. Brehm's land, while that part of the road has not been closed in the usual sense of the word, but has only been interrupted at the crossing beyond, over the neighboring land, to the Philadelphia Road. It is still open, as a county road now, to the railroad at Oakington, and without some further action will remain so after the elimination of the crossing, although any public or private right to pass over the tracks there will then have ended. At the time of the correspondence described, the whole road over Brehm's land was a private road, as stated in the protest. And to this protest the state commission, by its chairman, replied that it had no authority to close any road, and did not assume the prerogative. It had plain authority to remove grade crossings on state highways, and was exercising it.

Ten days later, on February 6th, 1936, the county commissioners received from Mr. Brehm a deed conveying the road or "right of way 40 foot wide and to include the bridge over Gashey's Run from the Pennsylvania Railroad right of way through the property of Henry A. Brehm to the outline of the property owned by Dr. S. Griffith Davis." The purpose of the conveyance was stated to be that of joining in converting the road to the main highway into a county road. Subsequently, on April 13th, 1936, another deed, executed by both parties to the first, declared that the previous one was not intended to give, and did not give, the county any right to close the road, that on the contrary it was intended that the road should be kept open and maintained as a county road.

On the following July 13th, 1936, at the request of the county commissioners, the State Roads Commission took over as a state road the crossing and section of roadway connecting with the Philadelphia Road, beyond that con-

veyed by Brehm. The rights needed for the substituted outlet over the bridge were then acquired by the state commission. On July 28th, 1936, an agreement between that commission and the railroad company looking to the alteration was executed, and in it the company agreed to contribute an amount which was equal to the cost of obtaining the rights of way for the new section of road to the bridge; and the commission agreed to close the crossing. On the following October 13th, 1936, Mr. Brehm's counsel wrote the railroad company asking what was planned, and was told in reply of its agreement to eliminate this grade crossing. Counsel then protested to the county commissioners against the project as a closing of the road conveyed to the county, in violation of the confirmatory deed. The county commissioners answered that they had no information of the matter. The protest was then heard by the chairman of the state commission in person. And two months later, an inquiry for the result of that hearing brought another statement that the agreement had been made. The suit followed.

The chancellor concluded that the State Roads Commission was fully empowered to remove the crossing and to provide the new outlet, as described, and that the complainant was not entitled to an injunction if notice of the plan were given. Sections 18 and 20 of article 89B, enacted in 1931, required that the commission should fix a time and place for a hearing of persons interested, and give such notice as it should deem reasonable, and although the Act of 1935, or section 32A, did not mention this requirement, the chancellor held that its general reference to exercise of the powers otherwise given in the Article imported the provision. It was decreed that the plan to remove the crossing was otherwise valid, and would furnish no ground of complaint, but that the project should be restrained until the notice and opportunity to be heard were given. An injunction was then issued for that purpose.

A formal notice of hearing was advertised as required, and the hearing held, and subsequently the commission

ordered that the crossing be legally vacated, abandoned, and closed. It is objected that the hearing was legally inadequate because no witnesses were called on behalf of the state commission, no argument was made or brief filed on its behalf, and a report which it had from its engineer on this crossing was not produced. Sections 18 and 20, requiring the hearing, do not specify the scope and procedure, but this court agrees in the contention that there must be a fair hearing and weighing of arguments and protests made. This does not mean that there must be a proceeding conducted like that usual in a court. Many hearings upon proposals for public improvements consist only of hearing protests. What is required for fairness may vary with particular projects. The problem of abolition of a grade crossing would seem to start with the fact that the crossing is, under modern conditions, dangerous in some degree, and that removal is desirable. It was testified that one hundred and one trains passed over this crossing in twenty-four hours, and that ninety vehicles crossed on the road, and that on this part of the railroad the speed of express trains is eighty miles an hour. Travelers on the road, adults and children, commonly approach in automobiles, and photographs in evidence show banks and structures to obscure the view somewhat. "Grade crossings are constant perils, not only to those using them, but to those upon trains passing over them, liable to be wrecked by collisions. Such crossings, whether private or public, ought in all cases to be done away with." *McKinney v. Pennsylvania R. Co.,* 222 Pa. 48, 70 A. 946. The failure to produce witnesses to these facts cannot be regarded as concealment of the facts and arguments for removal, or as withholding an opportunity to make any answer to them. The protest, indeed, seems to be, not to the removal of the crossing at grade, but rather to the relocation of the substituted overhead crossing so far to the southwest. The demand is that the new crossing, under or over the tracks, should be at or near the same site, and so in continuation of the former roadway. The facts on that issue would seem

plain, and the court does not feel able to say that the commission was required to have them stated in testimony for the answer of the protesting landowner.

The reasonableness of placing the substituted crossing so far to the south is a subject on which the judges have not been of one mind, but the majority consider it impossible for a court to hold on the evidence that the commission's determination, in the exercise of the State's police power, is unreasonable and extravagant, and that the convenience and rights of the landowners are arbitrarily disregarded. *Wight v. Balto. & O. R. Co.*, 146 Md. 66, 74, 125 A. 881. In addition to the physical factors in the problem, there would seem to have been by the use of an existing bridge a saving of money that would be entitled to influence, for the work of removing crossings must accept limitations on resources, and the convenience of users of the roadway must, to an extent, be adapted to those limitations.

The bridge is designed to bear a load of eight tons, and it is testified that at times the complainant sent heavier loads out; and the failure to provide for such heavier loads is thought to render the new way an unreasonable outlet. But the court has not been able to agree that a farm crossing bearing a load of eight tons is unreasonably light in construction. Restriction of the farm loads to that weight might be regarded as reasonable, and the complainant cannot, in the opinion of the court, demand more. To the extent that he finds heavier loads convenient, his convenience may be required to yield to the best substitute available, and if such loads must be carried occasionally, the old main highway to the south, without crossing the bridge, though much longer, is still open for them.

Finally, does the correspondence and procedure recited show that the complainant has been the victim of a fraud? The complaint on this ground is that Brehm's conveyance of the stretch of previously private roadway on his land, extending to the railroad right of way, was obtained by concealment of a purpose to remove the cross-

ing at the site. It might be difficult, on the evidence, to adjudicate as a fact that it was so induced by deception. But if it were, conveyance of that part of the road did not bring about, or aid in, the removal of the crossing beyond it. It did not, so far as appears, aid in placing the crossing and the portion of the road beyond, to the Philadelphia Road, under the control of the State Roads Commission. The removal could have been accomplished as well without acquisition of the road over Brehm's land as with it. He appears to have had at most an easement over the tracks and beyond, and even if the road over his land had continued in private ownership, the State, by its authorized agency, could have acquired the road over the tracks and beyond, and once owning it could have removed the crossing in the exercise of its police power. 2 *Elliott, Railroads* (3rd Ed.), sec. 789; *New York & N. E. Co. v. Bristol*, 151 U. S. 556, 566, 14 S. Ct. 437, 38 L. Ed. 269; *Costello v. Grand Trunk Ry. Co.*, 7 N. H. 403, 47 A. 265; *Murphy v. State Roads Commission*, 159 Md. 7, 149 A. 566. Therefore, if there was fraud or deception, the complainant lost nothing by it. If the past proceedings were all annulled, the county and the state commission would have ample power to take over and close the grade crossing now.

On a second hearing in the court below, as the case stood after notice and hearing by the commission required by the first decree, another decree was passed, dissolving the injunction and dismissing the bill of complaint, and this court concurs in the action.

A question whether the determinations announced in the first decree, and not made subject of appeal, foreclosed some of the principal subjects of argument, need not be discussed.

*Decree affirmed, with costs.*

OFFUTT and DELAPLAINE, JJ., dissent.

PARKE, J., delivered a separate opinion as follows, in which JOHNSON, J., concurred.

While what is set out in the following memorandum is implicit in the opinion of the court, the writer desires to emphasize certain points. The complainant does not seek to have the deeds annulled for fraud or mistake, but affirms and relies upon them to support his theory that the easement granted for the public way through the complainant's land must be permanently kept open as a public highway in accordance with complainant's construction of the meaning expressed by the recitals in the two deeds. So, while relying on the deeds as the basic ground of his relief, it does not lie in the mouth of the complainant to assail as invalid the instruments on which he depends for the maintenance of his rights. Even if the deeds had been obtained from him by fraud or deceit, the plaintiff has given verity to the instruments by his full ratification and confirmation. The instruments must, therefore, be accepted as valid and, so, operative. With all question of fraud excluded by the election of the plaintiff, it follows that the original deed and the second or declaratory deed must be read together to construe correctly the meaning and effect of the grant, since the general rule is that deeds made in full execution of the creation of an easement in the land merge the provisions of the contract of the parties and all previous negotiations and agreements leading up to the execution of the deeds as well as all prior and contemporaneous proposals, stipulations, and oral agreements. *West Boundary Real Estate Co. v. Bayles,* 80 Md. 495, 31 A. 442; *Worthington v. Bullitt,* 6 Md. 172; *Bladen v. Wells,* 30 Md. 577, 581.

The provisions of the two instruments constitute a covenant on the part of the County Commissioners of Harford County that the easement granted shall be kept open and maintained by the covenantor as a county road. The county accepted the grant of the plaintiff. From the point where the easement was intersected by the railway at the southern boundary line of the right of way of the railroad company, the county extended the new county road, on the bed of the former private way of the

plaintiff and others, across the railroad right of way and the land of one Brown, a short distance to the highway known as the Philadelphia Road. Thus, approximately on the private right of way of the plaintiff and others, a county road was opened which ran from its union with the Philadelphia Road southerly over the land of Brown and the right of way of the railway company and the land of the plaintiff and others to its terminus. The rights and obligations of the plaintiff must be determined with reference to the rights and obligations of the public in the way thus created. In accepting the promise of the county commissioners to maintain and to keep the public way open, the grantor was charged with the knowledge that this covenant would bind the grantee only so long as its observance was in the public interest, which might require, in the honest exercise of a sound discretion, either the abandonment of the highway or a part thereof, or a change in its location, or an abolition of the railway crossing at grade. The grantor must be held to have known that the county commissioners could not covenant against the exercise of the police power or of its discretionary power to change, alter or close, whenever the proper occasion arose, the highway in accordance with the public welfare, safety or convenience. *Niland v. Bowron,* 193 N. Y. 180, 85 N. E. 1012; *Globe Slicing Machine Co., Inc., v. Murphy,* 161 Md. 667, 671, 672, 158 A. 26; *Williston on Contracts* (Revd. Ed.), secs. 615, 626.

The parties were also apprised that the declared policy of the State was to close public railway crossings because of their danger to travelers by rail and highway, and thus a covenant not to abolish a grade crossing would be invalid as against public policy. The removal of the grade crossing was, therefore, a contemplated event. The time of its occurrence with reference to the grant of the plaintiff might be near or distant or never. Hence, when the grade crossing is abolished is immaterial so far as the rights of the parties are concerned. The plaintiff, consequently, has no redress in equity by way of injunction and his remedy, if at all, would be at law to recover such

damages as he may show himself entitled to recover, if there be a breach of the covenant to keep the road open. *Whalen v. Balto. & O. R. Co.*, 108 Md. 11, 21-24, 69 A. 390; *Maryland etc. R. Co. v. Silver*, 110 Md. 510, 517, 518, 73 A. 297; *Whalen v. Balto. & O. R. Co.*, 112 Md. 187, 199, 200, 76 A. 166; *Linthicum v. Washington, B. & A. Ry.*, 124 Md. 263, 269, 92 A. 917; *Schnepfe v. Consol. etc. Co.*, 164 Md. 630, 634-636, 165 A. 889; *Chesapeake & Potomac Tel. Co. v. Board of Forestry*, 125 Md. 666, 674, 94 A. 322.