RECONSTRUCTION FINANCE CORP. v. DUKE et al. (FRENKIL et al., third-party defendants).

Civ. No. 5306.

United States District Court
D. Maryland.

March 31, 1953.

Semmes, Bowen & Semmes, Bradley T. J. Mettee, Jr., and Norman P. Ramsey, all of Baltimore, Md., for plaintiff.

Anderson & Barnes and Wilson K. Barnes, all of Baltimore, Md., for Milton Duke.

William H. Hoffenberg, of Baltimore, Md., for Morton L. Kemper.

David P. Gordon and A. Frederick Taylor, of Baltimore, Md., for third party defendants.

Charles C. Hartman, Jr., of Baltimore, Md., for U. S. Casualty Co.

Joseph Loeffler, of Baltimore, Md., for John S. Mahle, receiver of Bond Construction Corp.

WILLIAM C. COLEMAN, Chief Judge.

The question presented is whether this Court should vacate its order permitting the impleading of third-party defendants pursuant to Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A. This Rule, which governs third-party practice, makes no reference to such action by the Court, but the authority given to the Court by the Rule with respect to third-party practice is permissive and discretionary, not mandatory.

This suit was instituted March 13, 1951, by the Reconstruction Finance Corporation against the defendants, Milton Duke

and Morton L. Kemper, officers of the Bond Construction Corporation, to recover on a contract of guaranty dated March 6, 1944, which they executed in order to secure a loan in the amount of $71,500, which the Reconstruction Finance Corporation agreed to make to the Bond Corporation in furtherance of that corporation's completion of a subcontract which it had entered into on January 6, 1944, with the main contractor, Victor Frenkil, trading as Baltimore Contractors, Inc., for the construction of a reservoir for the District of Columbia at Fort Stanton, Virginia. In accordance with its loan agreement, the Reconstruction Finance Corporation made various disbursements to Bond Construction Corporation aggregating $54,450, and was repaid $27,889.82. The Reconstruction Finance Corporation also realized on collateral, so that the net balance due on the loan was $25,840.32. On October 10, 1945, the original defendants voluntarily defaulted on their subcontract, as a result of which Frenkil proceeded with the contract. It is the last named amount, plus interest, which the Reconstruction Finance Corporation seeks to recover in the present suit.

On June 22, 1951, the defendants, Duke and Kemper, moved to join the main contractor, Frenkil, and his company, as third party defendants in the present suit, alleging fraudulent breach of their subcontract with the defendants. On July 10, 1951, Frenkil and his company moved to dismiss this third party complaint. After due hearing, this Court denied this latter motion and signed an order to that effect on October 15, 1951. On October 31, 1951, the third party defendants moved to bring into the case as fourth party defendants, John S. Mahle, receiver of the defendants' company, the Bond Construction Corporation, and also the United States Casualty Company, which issued performance and payment bonds for the defendants. This motion was granted; answers by these other parties were filed and the receiver of the Bond Company asserted a counterclaim against Frenkil and the Re-

construction Finance Corporation on account of Frenkil's alleged fraudulent failure to pay the sums to which he, the receiver of the Bond Company, was entitled. The receiver also sought a determination of his rights against Frenkil and an adjudication of the legal status of the Reconstruction Finance Corporation and the Bond Company by reason of the latter's assignment, executed at the same time as the contract of guaranty to the Reconstruction Finance Corporation as security for the latter's loan to the Bond Company, of all payments due or to become due from the main contractor, Frenkil, under the Bond Company's subcontract.

This Court has considered separately the extent of the liability of the original defendants to the Reconstruction Finance Corporation under their guaranty for repayment of the latter's loan to them, and in an earlier opinion held them liable to the full extent of the Reconstruction Finance Corporation's claim. At that time Victor Frenkil moved to vacate the Court's order of October 15, 1951 whereby Frenkil had been impleaded, asserting as ground for this motion that Federal jurisdiction no longer existed and that the remaining controversy would involve trial of a different issue from that presented by the original suit.

With respect to dismissing the third party complaint, the Reconstruction Finance Corporation has adopted a neutral position. But Duke and Kemper, and also the receiver oppose this motion on numerous grounds, which may be summarized as follows: (1) that since all parties to this complicated litigation are in Court, it will be more economical and expeditious to adjudicate here, in a single suit, the rights and liabilities of all of them; (2) that the entire controversy has a comon source, i. e., the construction contract with the District of Columbia; (3) that Frenkil, the third party defendant, has himself invoked the jurisdiction of this Court by impleading other parties, and is now estopped from seeking to be freed from this litigation; (4) that if

the Court should dismiss Frenkil without prejudice, and thereupon the original defendants should file suit against him in a State court, joining the Reconstruction Finance Corporation as a party defendant, the latter would forthwith remove the case back to this Court; and (5) that the original defendants and their receiver might be seriously damaged by refusal of this Court to proceed, because of the assignment which the original defendants made to the Reconstruction Finance Corporation of all payments due them from Frenkil.

■ Taking up these contentions in the order in which they have just been stated, with respect to the first contention, it is sufficient to say that even assuming but without deciding because impossible to do more than speculate, that it would be more economical and expeditious to adjudicate here, in a single suit, the rights and liabilities of all the parties, the question involved is not merely one of economy in terms of time and cost, but also of the proper exercise of discretion vested in this Court by Rule 14, taking all the facts and circumstances involved into account.

■ As to the second contention, while it is true that this entire controversy stems from the same subject matter, namely, Frenkil's main contract with the District of Columbia, this Court has completely adjudicated the rights of both parties to the suit as originally brought, and what remains is a separate and distinct controversy between parties subsequently impleaded, namely, the main contractor and one of his subcontractors involving entirely distinct issues of alleged fraud and misrepresentation on the part of the former in his business relations with the latter.

■ As respects the third contention, namely, that since Frenkil has impleaded both the receiver and the surety of the original defendants, he is estopped from pressing this motion, it is well settled that the granting or denying permission to implead a third party defendant is a matter resting entirely within the sound discretion of the Court,—Glens Falls Indemnity Co. v. Atlantic Building Corp., 4 Cir., 199 F.2d 60; Lee's Inc. v. Transcontinental Underwriters, D.C.Md., 9 F.R.D. 470; State of Maryland, To Use and Benefit of Wood v. Robinson, D.C.Md., 74 F.Supp. 279; Baltimore & Ohio v. Saunders, 4 Cir., 159 F.2d 481,—and since there is nothing in the Rule to indicate that discretion on the part of the Court does not equally apply with respect to a motion to withdraw or vacate such permission after it has been granted, what a party may have done in reliance upon this granting, is not necessarily controlling. The discretionary power still rests in the Court. But of course it must not be abused.

■ We turn to the fourth contention, namely, that should this Court now refuse to hear and adjudicate the issues that remain between the subcontractors and the main contractor, and should thereby force them into another forum, i. e., a State court, the Reconstruction Finance Corporation would be joined as a party defendant and would forthwith remove the case back to this Court. This contention is without merit because the Reconstruction Finance Corporation could not properly be joined as a party defendant. Should the receiver of the Bond Company bring suit against Frenkil, such suit would have to be to the use of the Reconstruction Finance Corporation as well as for the receiver. This Court has decided that the Reconstruction Finance Corporation has an unlimited guaranty from Duke and Kemper for repayment of the former's loan to them and that as further security for this repayment it holds an assignment of all of Duke and Kemper's rights against Frenkil. Thus, if the Reconstruction Finance Corporation were to become a party, it would be by virtue of the assignment, and therefore, the Reconstruction Finance Corporation would be a party plaintiff, not a party defendant, and as such, would have no right to remove the case to this Court.

■ The fifth and last of the contentions which we have enumerated is that the receiver of the Bond Company would be damaged by this Court's refusal to adjudicate

the controversy between that Company and Frenkil because of the assignment by Duke and Kemper to the Reconstruction Finance Corporation. However, this contention is not sound. What this Court has done in no way precludes or prejudices the receiver from suing Frenkil; but he must sue to his own use and to that of the Reconstruction Finance Corporation. In other words, the effect of the assignment does not *prevent* the receiver of the Bond Company from suing Frenkil, but gives to the Reconstruction Finance Corporation prior right as to any amount recovered from Frenkil, to the extent of any unpaid balance due to it on account of its loan to Duke and Kemper.

Counsel for Duke and Kemper, and for the receiver of the Bond Company, in opposing the motion, have relied to a large extent on the case of Glens Falls Indemnity Company v. Atlantic Building Corporation, supra. In that case, suit on a liability policy was brought by a building corporation insured under the policy, against the insurance company to recover the amount paid by the plaintiff, the building corporation, in settlement of a suit brought against it by a third party, for damages for assault and battery committed by the president of the plaintiff company; and the defendant insurance company filed a third party complaint against him. With respect to the third party phase of the case, the Court of Appeals for this Circuit said in its opinion, 199 F.2d 60, at pages 63–64:

"Finally we come to a feature of the case not heretofore discussed. The Insurance Company, before answering the complaint in the pending case, moved ex parte for leave to file a third party summons and complaint against Matlack under Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and leave was granted. The complaint, as filed, was to the effect that the damage suffered by the insured corporation was caused by the acts of Matlack and that he is liable to the corporation for any damages arising therefrom; and that the insurance policy provides that in the event of any payment thereunder, the Insurance Company shall be subrogated to all the insured's rights of recovery therefor against any person. Under this third party complaint the Insurance Company claimed the right to be reimbursed by Matlack for any sum paid by it to the insured corporation as the result of the pending suit.

"Subsequently on motion of Matlack the third party action was dismissed on the ground that under the law of South Carolina a party is not entitled to subrogation for the payment of the debt for which another is primarily responsible until he has paid the same, and since the Insurance Company has not paid to the insured the amount claimed by it, the third party action must be dismissed.

" * * * The purpose of the rule [Rule 14] is to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determinaton of the rights and liabilities of all of the interested persons in one suit. That purpose will be facilitated in the pending case if the third party action is entertained, since it may be that Matlack is liable to the insured for the losses suffered by it through his unlawful conduct and, if so, the Insurance Company would be subrogated to the rights of the insured under the express terms of the policy.

\* \* \* \* \* \*

"The situation in the pending case presents no difficulty to the practical application of the rule. *The liability of the Atlantic Building Corporation, the insured, to the injured party, and the liability of the Insurance Company to Atlantic grow out of the wrongful acts of Matlack; and it is peculiarly fitting that Matlack's personal liability to Atlantic and the right of the Insurance Company to subrogation be determined in the same case.* (Emphasis supplied.)

"We have held in Baltimore & O. R. R. v. Saunders, 4 Cir., 159 F.2d 481, that the question whether a third party defendant may be brought into an action is ordi-

narily a matter resting within the sound discretion of the judge. In the pending case, however, the third party action was dismissed under the mistaken opinion that the right of the Insurance Company to be subrogated to the rights of the insured could not be determined until the Insurance Company had paid the loss. The third party action was not and could not have been dismissed in the exercise of the court's discretion, because this would clearly frustrate the purpose of the rule. The case will therefore be remanded so that the claim against the third party may be submitted to the District Court."

The facts of the Glens Falls case are obviously quite different from the facts in the case at bar. This is clear from the language which we have italicized of the portion of the Court's opinion just quoted. In the Glens Falls case, the facts which the plaintiff was required to prove to establish ·its claim against the insurer were the same facts relevant to the insurer's third party claim against the insured's president. In contrast, in the case at bar, there are *two separate and distinct issues*, namely, (1) that relating to the contract of guaranty, and (2) that relating to the alleged fraudulent breach of the subcontract.

We believe that two decisions, both rendered by Judge Chesnut, i e., in Lee's Inc. v. Transcontinental Underwriters, and in State of Maryland v. Robinson, supra, involve facts basically analogous to those in the present suit, and that Judge Chesnut's reasoning and conclusions in those cases should be followed here.

In the first of these, the Lee's Inc. case, the plaintiff sued an insurance company for damages to plaintiff's house, caused by explosions allegedly within the coverage of the insurance company's policy issued to the plaintiff. The insurance company filed a third party complaint against other parties, claiming that the explosions alleged to have damaged plaintiff's property were caused by these other parties. The third party defendants filed a motion to vacate the ex parte order permitting them to be impleaded.

With respect to this third party issue, the Court said, 9 F.R.D. 470, at page 471:

"The wording of the rule [Rule 14] is not couched in' terms that are mandatory but are clearly discretionary. The primary purpose of the Rules (as stated in Rule 1) is that 'They shall be construed to secure the just, speedy, and inexpensive determination of every action.'

"Pursuant to this mandate I think wherever the application of a rule is discretionary and not clearly mandatory the Judge should apply it or not dependent upon the nature and circumstances of the particular case. In the instant situation there are considerations both pro and con with regard to applying the rule. It is urged by the movant that the rule should not be applied because the theory of liability of the original defendant to the plaintiff is entirely different from that asserted by the original defendant against the third-party defendants. The plaintiff's suit is obviously founded on the contract of the insurance policy and subject to the various provisions and conditions of the policy; while the liability, if any, of the third-party defendants to the original defendant on the theory of subrogation clearly involves an action in tort. Merely this fact of one claim being in contract and the other in tort is not of itself necessarily an obstacle to applying the rule. It is, I think, correctly said in 1948, 3 Moore's Fed.Prac. p. 426 that 'It is immaterial that the liability of the third-party rests on a different theory from that underlying plaintiff's claim. Forms of action are of no consequence in the federal courts, and a third-party claim may be based on negligence although the main claim sounds in contract, or vice versa.' See also Fruit Growers Co-op. v. Cal[ifornia] Pie & Baking Co., D.C.E.D.N.Y.1942, 2 F.R.D. 415; Davis v. Associated Indemnity Corp. v. Daniels, D.C.Md.Pa.1944, 56 F.Supp. 541.

"However, it is clear enough that the issues between the plaintiff and the original defendant on the insurance policy are different from the issue in the tort subrogation claim. In the latter there is presently

a serious dispute between the parties with respect to whether, to establish the subrogation claim, *negligence* of the contract or in using dynamite for the construction of the water tunnel must be shown. Counsel for the Insurance Company contends that there is no such necessity to prove negligence under the Maryland decisions. Scott v. Bay, 3 Md. 431, 443, 445; Green v. T. A. Shoemaker & Co., 111 Md. 69, 75, 73 A. 688, 23 L.R.A.,N.S., 667; Belt R. R. Co. v. Sattler, 100 Md. 306, 329, 330, 59 A. 654. But this contention is denied by the third-party defendants who say that there is no absolute liability on the City when exercising a necessary governmental function such as the provision for an adequate water supply. Attention is called to a line of Maryland cases including Mayor and City Council of Baltimore v. Himmelfarb, 1937, 172 Md. 628, 192 A. 595; Brehm v. State Roads Commission, 176 Md. 411, 5 A.2d 820, 6 A.2d 378, and Krebs v. State Roads Commission, 160 Md. 584, 588, 154 A. 131, holding that mere incidental partial injury to private property resulting from the exercise of governmental functions does not amount to such a taking as necessarily requires the payment of compensation for private property taken for public uses according to Maryland, and federal, constitutional law. *Finally on this point it may correctly be said that a judgment in favor of the plaintiff against the original defendant would not automatically become a judgment by the original defendant against the third-party defendant.* (Emphasis supplied.)

"The main purpose to be gained by applying the rule is economy of time of the courts, parties and witnesses, and the avoidance of expense and delay involved in trying a case twice where once would suffice. In the instant situation very possibly the issue of the amount of damage and the cause of the damage would be the same both on the plaintiff's claim against the defendant and on the claim of the original defendant against the third-party defendants. But it does not follow, as already observed, that the liability is necessarily the same. It is quite possible to visualize difficult questions of evidence with respect to admissibility on the claim of the plaintiff against the defendant on the one hand, and the subrogation claim on the other. Then again the number of witnesses to be examined on the issue as to the liability under the contract may be more or less, but probably less, than on the tort claim. It seems probable that the length of the trial would be very substantially increased if an effort is made to try the two issues before the same jury. And the possible difficulties with regard to the admissibility of evidence might very likely result in an appeal which could have been avoided if the cases were separately tried. It is true that the court would have the power to order separate trials of the two cases, one in contract and the other in tort, even though the motion to vacate the order for the impleader is overruled. But as the principal reason for allowing the impleader was the saving of time and expenses, there seems to be no good reason for keeping the impleaded third-party defendants in the particular case unless one trial would be sufficient for both issues. It is suggested by defendants' counsel that there could be but one trial for all the issues that would be common to both the contract and the tort case, leaving a separate trial before a different jury for any remaining issues with respect to the liability in the tort case not concluded by the determination of the claim sounding in contract. But I am not persuaded that this fragmentary trial of the tort claim would be satisfactory.

"In weighing the different considerations, the interests of the plaintiff ought not to be overlooked. Certainly there would be some delay in concluding the plaintiff's case against the defendant if the subrogation case is tried at the same time. To what extent this would entail further expense upon the plaintiff is not presently certain but it is a factor worthy of consideration. On the whole, it is my view that while there would doubtless be some practical advantage to the original defendant in trying the tort case along with the contract one, there are also disadvantages to the other parties to the case in adopting that

course. I conclude, therefore, that while there is power under the Rule 14(a) to allow this impleader of the third-party defendants, the ex parte order heretofore allowing it should be vacated in the exercise of sound discretion."

■ While, of course, there are distinctions between the Lee's Inc. case and the one at bar, as, for instance, the Lee's Inc. case was before a jury and the motion to vacate was heard before the trial of any part of the case, nevertheless, these distinctions do not change the basic principle common to both cases, that principle being that it rests within the discretion of the trial court to dismiss a third party claim when such claim would involve the trial of a different issue from that presented by the original suit.

In the second case decided by Judge Chesnut, State of Maryland v. Robinson, supra, suit was instituted under Lord Campbell's Act. The defendant sought to implead third party defendants who were alleged to be joint tort feasors. An initial motion to dismiss the third party complaint on the ground that there was no diversity of citizenship between the third party plaintiff and the third party defendant was overruled, the court holding that jurisdiction having been in the first instance properly invoked on the ground of diversity of citizenship between the original plaintiff and the original defendant, the third party complaint properly invoked ancillary jurisdiction and was not therefore subject to dismissal for lack of diversity. Subsequently, the original defendant settled with the plaintiff and received from the plaintiff formal releases. Attempt was made by the original defendant to continue against the third party defendants, who moved again to dismiss the third party complaint. Judge Chesnut said, 74 F.Supp. 279, at page 282:

"It should also be noted that the granting of leave to file a third party complaint is ordinarily a matter resting within the sound discretion of the trial judge. * * *

"While the original exercise of the discretion in this case was to grant leave to file the third party complaint, I take the view that the discretion also equally applies with respect to the present motion to dismiss it. One of the reasons for giving leave to file the third party complaint in this case was economy of time and costs in trying all the several issues in the case at one trial. But this consideration no longer exists by reason of the voluntary action of the original defendants in settling with the plaintiffs and taking their release to all persons responsible for the accident. Thus there remains for disposition only the single and isolated question of contribution which can be litigated with equal convenience in the State court where alone it could have been brought by the parties adversely interested therein, save for the original existence of the several issues presented in this case before the settlement and releases.

"For these reasons I conclude that the motion now made to dismiss the third party complaint must be granted."

The close analogy of the facts in the Robinson case to those in the case at bar is readily apparent. The original suit of Reconstruction Finance Corporation against Duke and Kemper has been completely adjudicated. The controversy remaining is between the receiver of the Bond Company and Duke and Kemper against Victor Frenkil,—all of whom are citizens of Maryland.

Judge Chesnut's holding in the Robinson case was followed in a case in the Northern District of New York, Thomas Worcester, Inc. v. Clover Stores Corp., 11 F.R. D. 334, where, again, an analogous situation was presented. In that case the plaintiff sued the defendant for services performed, and defendant filed a third-party complaint against 169 Central Realty Corp., as landlord, based on lease provisions making the landlord liable to the tenant for the services sued on, but defendant sought permission to withdraw the third-party complaint without prejudice, when plaintiff and defendant settled their cause of action. The Court said, 11 F.R.D. at page 335:

"The case of the State of Maryland, etc. v. Robinson, D.C., 74 F.Supp. 279, is in

point here. The same problems were presented and Judge Chesnut distinguished those cases where jurisdiction once obtained was not lost by reason of a change of parties. The Court is impressed that to retain the third-party action here would be to afford an easy method whereby the jurisdiction of the Court could be extended in violation of Rule 82. Cases such as Sheppard v. Atlantic States Gas Co., 3 Cir., 167 F.2d 841, justify the consideration of a case where diversity does not exist, not upon the theory of jurisdiction but upon convenience of disposing of all related litigation in accordance with the spirit of Rule 14. It is evident that the nature or subject matter of the action, and to some extent, the discretion of the Court are the guides to the decision.

"The only reason that the third-party complaint was allowed to be served was to avoid the necessity of proving the amount of the services performed in two separate causes of action. That reason no longer exists. The liability of the owner and the amount of his liability raised in a controversy between two citizens of New York is one that can be entirely disposed of in a state court action where it properly belongs. The purpose of Rule 14 is no longer served. This Court should not retain the case where jurisdiction is questionable, and the question raised may be said to be within the Court's discretion to be exercised in the light of the purpose of the Rule."

█ Finally, it is important to note that Rule 82 of the Rules of Civil Procedure, 28 U.S.C.A., expressly provides, in the following language, that the jurisdiction and venue of this Court remain unaffected by these Rules: "These rules shall not be construed *to extend or limit* the jurisdiction of the United States district courts or the venue of actions therein." (Emphasis supplied.) It is believed that refusal to grant the present motion would be tantamount to

extending the jurisdiction of this Court in a way not contemplated by Rule 82.

For the aforegoing reasons the motion is granted to vacate the order of October 15, 1951, which allowed Victor Frenkil individually and formerly trading as Baltimore Contractors and Baltimore Contractors, Inc., to be impleaded as third party defendants.