**DUKE et al.**

v.

**RECONSTRUCTION FINANCE CORP. et al.**

No. 6697.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 12, 1953.

Decided Jan. 4, 1954.

Wilson K. Barnes and Joseph Loeffler, Baltimore, Md. (William Hoffenberg and Harry E. Goertz, Baltimore, Md., on brief), for appellants.

Norman P. Ramsey and A. Frederick Taylor, Baltimore, Md. (Bradley T. J. Mettee, Jr., Semmes, Bowen & Semmes, Gordon & Feinblatt and David P. Gordon, Baltimore, Md., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Reconstruction Finance Corporation (hereinafter called R. F. C.) instituted a civil action against the defendants, Milton Duke and Morton L. Kemper, officers of the Bond Construction Corporation, (hereinafter called Bond), to recover on a contract of guaranty executed by Duke and Kemper, in order to secure a loan in the amount of $71,500, which R. F. C. agreed to make to Bond in furtherance of Bond's completion of a sub-contract which it had entered into on January 6, 1944, with the main contractor, Victor Frenkil, trading as Baltimore Contractors, Inc. The main contract was for the construction of a reservoir for the District of Columbia at Fort Stanton, Virginia.

In accordance with its loan agreement, R. F. C. made various disbursements to Bond aggregating $54,450 and was repaid $27,889.82. R. F. C. also realized on collateral, so that the net balance due on the loan was $25,840.32. On October 10, 1945, the original defendants voluntarily defaulted on their sub-contract, as a result of which Frenkil proceeded with the contract. R. F. C. sought a recovery on the guaranty contract against Duke and Kemper for this balance, $25,840.32, plus interest.

On June 22, 1951, the defendants, Duke and Kemper, moved to join the main contractor, Frenkil, and his company, as third party defendants in the present suit, alleging breach of their sub-contract with the defendants and fraud in connection with this sub-contract. On July 10, 1951, Frenkil and his company moved to dismiss this third party complaint. The District Court denied this latter motion. On October 31, 1951, the third party defendants moved to bring into the case as fourth party defendants, John S. Mahle, receiver of the defendants' company, Bond, and also the United States Casualty Company, which issued performance and payment bonds for the defendants. This motion was granted.

Answers by these other parties were filed and the receiver of Bond asserted a counter-claim against Frenkil and R. F. C. on account of Frenkil's alleged fraudulent failure to pay the sums to which he, as receiver of Bond, allegedly was entitled. The receiver also sought a determination of his rights against Frenkil and an adjudication of the legal status of R. F. C. and Bond by reason of the latter's assignment, executed at the same time as the contract of guaranty to R. F. C. as security for R. F. C.'s loan to Bond of all payments due or to become due from the main contractor, Frenkil, under Bond's sub-contract.

The District Judge wrote two opinions in this case. The first opinion, which we

shall now consider, dealt with the liability of Duke and Kemper, on the contract of guaranty. Judgment, on this contract, was duly entered in favor of R. F. C. against Duke and Kemper, the guarantors. Appeal has been duly taken to us.

█ One defense of the guarantors, Duke and Kemper, was that there had been an alteration of the loan authorization subsequent to the submission by R. F. C. of all the papers to these defendants. On this point, the District Judge stated:

> "While some parts of the evidence are not free from doubt, I reach the conclusion that the weight of the credible evidence does not justify this Court in saying affirmatively that there was any change in the loan authorization subsequent to submission of all of the papers to the defendants."

This is, of course, a pure question of fact. After a review of the record, we cannot say this finding is clearly erroneous, so we must uphold it. The paper alleged to have been altered was a R. F. C. document in no way requiring the signature of the borrower or the guarantors. It was a resolution of the lending agency's review committee laying down the conditions of the loan. The record adequately supports the finding that the change was clearly made before the document left the agency and that the document was never before the guarantors without the addition. See, Knapp v. Imperial Oil Co., 4 Cir., 130 F.2d 1; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Duke and Kemper filed an answer in which the following defenses were also raised:

(a) That R. F. C. failed to act reasonably and properly to compel Frenkil to make payments under the assignment from Bond to R. F. C. heretofore referred to, thereby causing the guarantors to be held liable for the unpaid balance of the obligation although Frenkil might have been held.

(b) Laches on the part of R. F. C. for failing to proceed against Frenkil promptly thereby prejudicing Duke and Kemper.

(c) Gross negligence and wilful conduct by R. F. C. by acquiescence in and failing to prevent Frenkil's alleged fraud on Bond.

█ Duke and Kemper thus urge that a practically unconditional guaranty of payment is discharged because the R. F. C. did not diligently enforce its rights or supposed rights against collateral security additional to the guaranty held to secure the note of the Debtor. The argument of the guarantors is directly contrary to both the law of guaranty and the documents which control in this case.

In connection with this point it is well to note the specific provisions of the guaranty in question that R. F. C. "shall not be required, prior to any such demand on, or payment by the undersigned (guarantors) to make demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral." This is a spelling out by the parties of precisely the legal effect of an unconditional guaranty.

Another important portion of the guaranty bearing on the asserted defenses is the language found in the section of the guaranty granting R. F. C. powers to deal with the collateral and the underlying obligation, which provided as follows:

> "The undersigned (Duke and Kemper) hereby grants to Reconstruction Finance Corporation full power, in its uncontrolled discretion * * * to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
>
> *    *    *    *    *    *
>
> "(e) In the event of nonpayment when due * * * of any of the

Liabilities, \* \* \* *to realize on the collateral or any part thereof,* as a whole or in such parcels or subdivided interests as Reconstruction Finance Corporation may elect \* \* \* *or to forbear from realizing thereon,* all as Reconstruction Finance Corporation *in its uncontrolled discretion* may deem proper \* \* \*." (Italics supplied.)

The paragraph then provides:

"The obligation of the undersigned (Duke and Kemper) shall not be released, discharged or in any way affected \* \* \* by reason of any action the Corporation *may take or omit to take under the foregoing powers.*" (Italics supplied.)

These provisions of the guaranty confer on R. F. C. the right to determine whether or not to pursue such rights in the discretion of R. F. C.

In the light of these provisions, we think the District Judge correctly ruled that these defenses were lacking in merit. See, Merchants National Bank v. Stone, 296 Mass. 243, 5 N.E.2d 430; Hodgson v. Burroughs, 175 Md. 413, 2 A.2d 407; Continental Oil Co. v. Horsey, 175 Md. 609, 3 A.2d 476; 24 Am.Jur. 885, 38 C.J.S., Guaranty, § 61, p. 1217; Stearns, Law of Suretyship, Elder's Revision (5th Ed.1951) 65.

■ An examination of the guaranty shows that no condition is attached to the document with respect to the obtaining by R. F. C. of an apportionment agreement. The argument that R. F. C. was required to obtain such an agreement is an attempt to add to a written guaranty contract by parole.

The contract of guaranty in this case was a separate and distinct contract relation between the guarantors and R. F. C. and merely collateral to the loan arrangement between R. F. C. and Bond. The integrated contract between the guarantors and the R. F. C. was represented by the guaranty and the note which it secured. The obligation of the guarantors was fixed by the guaranty's terms and no condition requiring an apportionment agreement is incorporated in the arrangement.

■ A further reason exists for rejecting the contention of the Appellants regarding the apportionment agreement, however. The purpose of such an agreement is to fix the rights and liabilities of R. F. C. and a bonding company acting as surety on prime contracts for the furnishing of supplies to the United States government or any department or agency thereof. Such an agreement is inappropriate to a subcontract under a prime contract because, upon default, the rights, duties and privileges of the prime contractor and his sureties would intervene and would limit the right of R. F. C. and the surety on the subcontract to complete the contract and earn the sums payable.

■ Another defense urged on us is that R. F. C. advanced in excess of $12,000 to Bond thereby discharging the Guarantors; this is adequately answered by the opinion of the District Judge, where he found that the $12,000 limitation was solely a restriction as to the amount of disbursements that could be made "prior to receipt of copies of invoices."

The loan authorization clearly provided in paragraph 7 that R. F. C. would advance "a sum not in excess of $12,000 \* \* \* prior to receipt of copies of invoices." The clear meaning of the words is that after the receipt of invoices on the job the limit was changed subject to the remaining limitation that the balance could not at any time exceed $35,000.

We must, therefore, affirm the judgment of the District Court in favor of R. F. C. and against the guarantors, Duke and Kemper.

Another, and a more difficult, question is covered by the second opinion of the District Judge, 14 F.R.D. 265, the propriety of the order of the District Judge granting the motion of Frenkil to vacate the previous order permitting the impleading of the third-party defendants. As the District Judge stated, R. F. C.,

on this point, "has adopted a neutral position. But Duke and Kemper and also the receiver (of Bond) opposed this motion on numerous grounds." Prior to the granting of this motion, the District Court had passed an order for judgment in favor of R. F. C. and against the guarantors, Duke and Kemper.

■■ Rule 14, Federal Rules of Civil Procedure, "Third-Party Practice", contains no express grant to the court of the power to *vacate* a previous order of the court permitting third-party defendants to be impleaded. We think, though, that very clearly the court has this power. It would indeed be strange if the court, having properly granted an order permitting such impleading, should find that, at some later stage or turn of the case, the impleading order has become improper, and should then be impotent, though the clear ends of Justice may require it, to vacate this order. We think, further, that the vacation of this order, as in the case of passing such an order, rests in the sound discretion of the trial judge, and that his decision here can be upset on appeal if, but only if, he has abused this discretion.

District Judge Chesnut (a recognized authority in this field) in State of Maryland, to Use and Benefit of Wood v. Robinson, D.C., 74 F.Supp. 279, 282, has stated:

> "While the original exercise of the discretion in this case was to grant leave to file the third party complaint, I take the view that the discretion also equally applies with respect to the present motion to dismiss it."

To like effect is the statement (with citation of authorities) of District Judge Delehant, in Bill Curphy Co. v. Lincoln Bonding & Insurance Co., D.C., 13 F.R.D. 146, 147:

> "It is recognized by the contending parties that the allowance of third party procedure within Rule 14 and its vacation, once improvidently initiated rest in the mature and informed discretion of the court."

See, also, the opinion of District Judge Brennan in Thomas Worcester, Inc., v. Clover Stores Corporation, D.C., 11 F.R. D. 334, 335; and the opinion of District Judge Chesnut in Lee's, Inc., v. Transcontinental Underwriters, D.C., 9 F.R.D. 470.

■ Since we think the District Judge here had complete power to vacate his previous order, and, since we further think that in so doing he did not in any way abuse his discretion, his decision on this point must be affirmed.

We find no merit in the contention, in opposition to the vacating order, that if suit is brought in the State courts upon the claims not adjudicated in the instant proceeding, R. F. C. may remove this suit to the federal court; and that Frenkil is estopped from pressing his motion to vacate, because, when he was impleaded as a third-party defendant, he impleaded the receiver and surety of the original defendants. It is not necessary for us to add anything to what was said on these points in the opinion of the District Judge.

Perhaps the strongest ground urged against the vacating order is that the various claims involved in this complicated litigation all have a common source and that it would be more economical and expeditious to adjudicate them in the single civil action before the District Court. This is a peculiar field, under all the facts and circumstances, for the play of the trial court's discretion.

From the opinion below we quote:
> "While it is true that this entire controversy stems from the same subject matter, namely, Frenkil's main contract with the District of Columbia, this Court has completely adjudicated the rights of both parties to the suit as originally brought, and what remains is a separate and distinct controversy between parties subsequently impleaded, namely, the main contractor and one of his subcontractors involving entirely distinct issues of alleged fraud and misrepresentation on the part of the

former in his business relations with the latter."

Nor are the opponents of the vacating motion seriously prejudiced by the granting of this motion. They are free to sue Frenkil in the State court and any preparations they have made on the hope that the whole case would be disposed of in the instant action in the federal court, will be equally helpful in the State court, which is altogether competent to try the issues involved.

See, in this connection, the opinions of District Judge Chesnut in Lee's, Inc., v. Transcontinental Underwriters, D.C., 9 F.R.D. 470; State of Maryland to Use and Benefit of Wood v. Robinson, D.C., 74 F.Supp. 279, 282. There is nothing in the opinion of Circuit Judge Soper, speaking for our Court in Glens Falls Indemnity Co. v. Atlantic Building Co., 4 Cir., 199 F.2d 60, to militate against the views we have here expressed. As the District Judge said in his opinion below [14 F.R.D. 270]:

"The facts of the Glens Falls case are obviously quite different from the facts in the case at bar. * * * In the Glens Falls case, the facts which the plaintiff was required to prove to establish its claim against the insurer were the same facts relevant to the insurer's third party claim against the insured's president. In contrast, in the case at bar, there are two separate and distinct issues, namely, (1) that relating to the contract of guaranty, and (2) that relating to the alleged fraudulent breach of the subcontract."

There is some force in the suggestion that the federal courts were not intended for the trial of cases involving no federal question, between citizens of the same State, which the State courts are fully competent to try. And we should discourage attempts by litigants to ride into the federal courts on the coattails of a distantly related, but quite dissimilar, original civil action. See, the opinion of Circuit Judge Parker, speaking for our Court, in Baltimore & Ohio Railroad Co. v. Saunders, 4 Cir., 159 F.2d 481.

For the reasons we have expressed, the judgment of the District Court is affirmed.

Affirmed.