**UNITED STATES of America, Plaintiff,**

v.

**Paul W. BROWN and Richard J. Bingham, Defendants.**

**Civ. A. No. 91–73030.**

United States District Court, E.D. Michigan, S.D.

Oct. 5, 1993.

Julia A. Caroff, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Lester N. Turner, East Lansing, MI, Nathaniel W. Stroup, Petoskey, MI, for defendants.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court are the parties' cross-motions for summary judgment. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), the court dispensed with oral argument. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment.

#### I.  Background Facts

In this action, the Small Business Administration ("SBA") is seeking to enforce the personal guaranties of defendants Paul Brown and Richard Bingham on a loan assigned to the SBA. The loan was initially made on July 24, 1980, in the amount of $300,000, by Union National Bank & Trust Co., now known as First of America—Upper Peninsula, N.A. ("the Bank"), to Cliffs Ridge Development Company, a Michigan partnership ("the Partnership"). The loan was made pursuant to an SBA-backed program. It was secured by a mortgage on business real es-

tate and a security interest in business chattels.

In 1982, the Partnership wanted to sell its business. Defendants Brown and Bingham formed a new corporation, Cliffs Ridge Skiing Corporation ("the Corporation"), and made an offer to purchase the Partnership. The SBA would only agree to the sale, and allow the members of the Partnership to be relieved of personal liability on the loan, if Brown and Bingham signed personal guaranties of $50,000 each. On February 4, 1982, the Corporation executed an assumption agreement. Under the assumption agreement, the Corporation assumed what remained of the $300,000 loan and the SBA/Bank liens on the real estate and chattel of the Partnership. On November 15, 1982, defendants Brown and Bingham signed personal guaranties, promising to pay $50,000 each if the Corporation defaulted on the loan.

On August 24, 1984, the Bank sued the Corporation and defendants in state court, demanding payment on another loan. The lawsuit was later settled after a repayment plan was worked out among the parties.

On October 28, 1987, the Corporation filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Michigan. The SBA was not a party to the bankruptcy proceedings. The Corporation assets were sold at auction by the court. Defendants claim that the Bank received $271,571.02 from the liquidation of the real estate and chattel loan collateral. Plaintiff, on the other hand, claims that the Bank received only $256,571.00 plus earned interest of $3,440.43 from the sale of the collateral. Both sides agree that the Bank used approximately $60,000.00 of the proceeds to satisfy a different mortgage on the real estate that the Corporation had with the Bank.[1]

Of the remaining amount, defendants contend that the Bank applied $43,759.70 of the collateral proceeds as payment for attorney fees and expenses on the SBA note and other, non-SBA, loans held by the Bank. Plaintiff argues, however, that the Chapter 11 proceeding generated fees and expenses in excess of $56,700.00. Plaintiff contends that the Bank only deducted $17,477.92 of this amount from the collateral proceeds. The remaining $39,000 was apportioned for fees and expenses unrelated to the SBA loan, and were not satisfied with proceeds from the collateral securing the SBA note.

After deducting the $17,000 in fees and expenses and the $60,000 mortgage, plaintiff contends that there is $107,865.85 plus interest still outstanding on the original loan. Defendants claim, however, that the Bank only applied $196,650.80 in collateral proceeds toward payment of the SBA loan, and that they were thereby deprived of $74,920.22 that should have been used to satisfy the remainder of the SBA loan.

After the conclusion of the bankruptcy proceedings, the Bank brought a lawsuit in state court against defendants Brown and Bingham on February 23, 1990. After filing in state court, the Bank assigned the promissory note for the $300,000 loan to the SBA on May 11, 1990. The state court case was settled before trial on December 12, 1990.

Before settlement, the SBA sent a letter to defendants on September 24, 1990, demanding payment of their personal guaranties. The SBA sent a second letter demanding payment on March 15, 1991. As of October 15, 1992, plaintiff contends that $107,865.85 in principal and $107,718.90 in interest was still due. Plaintiff now moves for summary judgment on its action to enforce defendants' guaranties.

## II. Standard of Review

■■■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or

---

1. Plaintiff says the Bank retained $60,974.82, while defendants put the figure at only $59,920.22.

628

refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■■■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■■■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

Defendants have asserted four basic defenses to plaintiff's claim against them. They claim that (1) there was inadequate consideration given in exchange for defendants' personal guaranties, (2) the statute of limitations has run, (3) plaintiff's claim is barred by res judicata, and (4) the proceeds of the bankruptcy auction were misapplied so as not to properly satisfy defendants' debt with plaintiff. The court will address each defense in turn.

### A. Adequacy of Consideration

■■■ Defendants claim that their personal guaranties were not supported by adequate consideration. They argue that the $300,000 loan was made in 1980 to the Partnership. On February 4, 1982, the defendants signed an assumption agreement whereby they took over the indebtedness of the Partnership and its individual members. The assumption agreement was not directed to the Bank or the SBA and, therefore, nothing was given by the SBA in exchange for defendants' personal guaranties. Additionally, the defendants claim that any consideration for allowing the assumption of the indebtedness and for the release of the members of the Partnership was consideration that passed to the Partnership and not to the defendants. After examining the record, however, the court finds that defendants' argument that the

guaranties were not supported by consideration lacks merit.

At the time that the Corporation purchased the assets of the Partnership, the $300,000 loan was in default and the Bank and/or the SBA could have called in the loan at any time. In exchange for the personal guaranties of the defendants, the SBA allowed the defendants to purchase the loan collateral and assume the debt of the Partnership. The personal guaranties explicitly state that "[i]n order to induce SBA ... to make a loan or loans, or renewal or extension thereof, to Cliffs Ridge Skiing Corp. ..., the Undersigned [defendants] hereby unconditionally guarantees to Lender, its successors and assigns" that payment will be made on the $300,000 loan.

It is clear that defendants' personal guaranties were supported by adequate consideration. Without the guaranties, the SBA would not have consented to defendants' proposed deal to take over the Partnership's business. Since the loan to the Partnership was already in default, the SBA and the Bank needed additional security for them not to call in the loan, and instead, allow defendants to assume the debt. In a June 1982 letter, the SBA explicitly conditioned its consent to the proposed assumption of the loan by defendants upon the execution of personal guaranties. Even though the assumption agreement was signed in February, the deal did not close until December of 1982, at which point the defendants had executed the necessary guaranties. Thus, based on the explicit language of the guaranties themselves and the clear understanding of the parties, the personal guaranties were supported by adequate consideration.

### B. Statute of Limitations

Defendants claim that plaintiff's action is barred by the applicable statute of limitations. Defendants contend that plaintiff's cause of action accrued when the Bank filed suit against the defendants for enforcement of the guaranties in 1984. Since plaintiff filed suit in 1991, over seven years after the claim accrued, defendants claim that plaintiff's action is barred.

The statute of limitations for plaintiff's cause of action is found at 28 U.S.C. § 2415(a). Section 2415(a) provides as follows: "every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." This section covers actions brought by the SBA to enforce personal guaranties on defaulted loans. *United States v. Vanornum,* 912 F.2d 1023, 1025 (8th Cir.1990); *United States v. Rollinson,* 866 F.2d 1463, 1465 (D.C.Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989).

The point at which plaintiff's cause of action accrued is governed by the language of the guaranties. The guaranties provide in relevant part as follows:

> In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor....

In *Vanornum,* the Eighth Circuit examined SBA loan guaranties containing the same provisions as those at issue in this case. The court found that the SBA's cause of action did not accrue until it made a written demand on the guarantor. *Vanornum,* 912 F.2d at 1027. In this case, the SBA only made a written demand upon the defendants in letters dated September 24, 1990. Suit was filed by the SBA on June 19, 1991, well within the required six years.

Defendants claim that written demands were made upon them in 1984, when the Bank first brought suit against them because of default upon the promissory notes then held by the Bank. Plaintiff points out, however, that the personal guaranties were made to the SBA and not to the Bank. As a result, the Bank could not have enforced the guaranties nor made a written demand for payment based upon them. Furthermore, the Bank's 1984 lawsuit was dismissed when the parties were able to come to a loan workout arrangement whereby the Corporation used

a block grant to make their loan current. It was not until April 1, 1987, that the loan again became delinquent.

In any event, the statute of limitations did not begin to run on plaintiff's action until defendants received a written demand for payment in October of 1990. Plaintiff's action is, therefore, not barred by the statute of limitations.

### C. Res Judicata and Collateral Estoppel

Defendants claim that plaintiff's action is barred by the terms of an agreement reached between the defendants and the Bank in December of 1990, that settled the second lawsuit brought by the Bank against the defendants. The Bank's second lawsuit was brought to enforce personal guaranties in the amount of $40,000 that defendants signed in 1985. The guaranties were made to the Bank, not the SBA, and were entered into in order to induce the Bank to extend an additional loan to defendants in 1985. The 1990 settlement explicitly stated that the agreement would have no effect on any claims that the SBA might have against the defendants. The agreement states:

> It is expressly agreed by BROWN, that [Bank's] release does not in any way restrict or compromise any rights of the United States Small Business Administration ("SBA") to enforce BROWN'S liability as guarantor of, or otherwise for, any indebtedness resulting from loans made [Bank] to Cliffs Ridge Development Co. or Cliffs Ridge Skiing Corp. where and to the extent that the SBA has succeeded, by assignment or subrogation, to [Bank's] rights as lender.[2]

In October of 1990, before the settlement agreement with the Bank was reached, each defendant received a written demand from the SBA for payment of the personal guaranties. Thus, when defendants reached their settlement with the Bank, they were fully aware that they still faced liability under the guaranties from the SBA based on the demand letters and on the explicit provisions of the settlement agreement itself. Plaintiff's claim is not barred by res judicata or collateral estoppel.

### D. Misapplication of Proceeds

■ Defendants' final claim is that the proceeds of the bankruptcy sale of the loan collateral were misapplied by the Bank. Defendants argue that had the proceeds been properly applied, the $300,000 loan would have been fully satisfied and the personal guaranties would never have been enforced. Plaintiff contends that the proceeds of the bankruptcy sale were properly applied to the various debts and expenses involved. Furthermore, plaintiff relies on the terms of the guaranties, which give the SBA "uncontrolled discretion" in its dealings with the collateral and the liabilities.

Defendants claim that $59,920.22 of the proceeds were used to satisfy a pre-existing debt with the Bank. The old debt stemmed from a promissory note given by the Partnership in 1972 that was secured by a mortgage on business real estate. When the $300,000 loan was made, it was also secured by a mortgage on the same property. Defendants claim that the first position mortgage was discharged in 1980 and then renewed as a mortgage second in priority to the mortgage securing the SBA/Bank loan. As a result, defendants claim that the proceeds of the sale of the real estate should have been applied entirely to the SBA/Bank loan instead of the 1972 loan. Plaintiff presents various arguments contending that the 1980 mortgage was a second position mortgage.

The court does not need to address the issue of whether a second mortgage existed because the provisions of the guaranties are conclusive on the issue of whether the funds

---

**2.** The settlement agreement signed by defendant Bingham contains a similar provision that expressly says that Bingham's liability as guarantor to the SBA is not effected by the release agreed to by the Bank. The Bingham agreement is different in that the phrase "to the extent that the SBA has succeeded, by assignment or subrogation, to [Bank's] rights as lender" is not included. Defendant Bingham claims that as a result, he had no notice of the assignment. The settlement agreement still expressly excluded any SBA indebtedness and the SBA had already made a written demand upon defendant Bingham in October of 1990. As a result, both defendants were well aware of the circumstances of the settlement agreement that they had reached and the fact that plaintiff's claim would not be barred as a result.

were properly applied. The court finds that under the guaranties, the SBA had the discretion to decide not to pursue any possible rights it might have towards the collateral that the Bank used to satisfy the 1972 promissory note.

The discretion granted to the SBA is clearly delineated in the provisions of the guaranties. The guaranties state in relevant part:

The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

.　　.　　.　　.　　.

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be the same or of a different character or value than the collateral surrendered by Lender;

.　　.　　.　　.　　.

Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.

Thus, under these provisions, the SBA had the discretion not to enforce its rights under the mortgage, and to allow the Bank to retain a portion of the collateral in satisfaction of the pre-existing debt assumed by the Corporation. The SBA also had the discretion

to apportion part of the proceeds for payment of reasonable expenses and attorney fees stemming from the bankruptcy proceeding that are related to the SBA-backed loan. As the promissory note provides, the SBA/Bank has the right to deduct all expenses incidental to the sale of the collateral.

The Sixth Circuit addressed the guaranty provisions and the extent of the discretion of the SBA in *United States v. Willis*, 593 F.2d 247 (6th Cir.1979). In *Willis*, the court found that the SBA was required to act in a commercially reasonable manner when it sold collateral even though the guaranties at issue granted the SBA "uncontrolled discretion." *Id.* at 254. Even though the court seemingly limited the discretion of the SBA, it noted that "[t]he failure of the secured party to diligently enforce its rights against collateral security additional to the guaranty, held to secure the note of the debtor, clearly would not discharge a guarantor's duties pursuant to an unconditional guaranty." *Id.* at 255 n. 10 (citing *Duke v. Reconstruction Finance Corp.*, 209 F.2d 204 (4th Cir.), *cert. denied*, 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108 (1954)). Other courts have come to similar conclusions. *See United States v. Proctor*, 504 F.2d 954 (5th Cir.1974) (SBA failed to record a mortgage; within its discretion under the guaranty); *United States v. Flasher Co. of Texas*, 460 F.Supp. 231 (S.D.Texas 1977) (because SBA failed to file a timely financing agreement, the IRS perfected tax liens on collateral; guarantors still liable); *United States v. Fisher*, 460 F.Supp. 297, 299 (E.D.Wis.1978) (SBA had discretion not to give an accounting of the disposition of the collateral).

In this case, even if the SBA note was secured by a mortgage with priority, the SBA had the discretion not to enforce its rights under the mortgage. Furthermore, the SBA certainly had the discretion to deduct reasonable expenses and fees that resulted from the bankruptcy and the default. The defendants are bound by the discretion that they gave to the SBA in their guaranties and in the promissory note itself.

The only remaining issue with regard to the application of the collateral proceeds is a factual one. The parties have presented the

court with different figures for the amount received by the Bank in proceeds and for the amount that was expended in expenses and attorney fees. Because this is a motion for summary judgment, the court will take the defendants' factual assertions regarding the various amounts expended as true.

Defendants state that the Bank received $271,571.02 from the sale of the collateral. Of this amount, defendants claim that "the Bank only applied $196,650.80 toward the payment" of the SBA note. Brief for Defendants at 5. The defendants argue that the difference was misapplied to the 1972 loan and expenses and attorney fees. The court, however, has already ruled that the SBA had the discretion to apply a portion of the proceeds towards the Bank's earlier loan and reasonable fees and expenses.

According to the court's calculations, the SBA claims that it applied approximately $181,000.00 of the proceeds towards satisfaction of the principal.[3] Taking the defendants' claims as true, therefore, an additional $15,650 should be deducted from principal still outstanding on the loan. Thus, instead of there being $107,865.85 in principal as claimed by plaintiff, according to the defendants, only $92,215.85 in principal would still be owed on the SBA note. As of October 15, 1992, plaintiff states that $107,718.90 in interest has accrued. Assuming that defendants' calculations of the amount still owed on the principal are true, the amount of interest would be reduced accordingly.

Even with these deductions, however, well over $100,000 in principal and interest is still owed on the SBA note according to the figures presented by the defendants. Therefore, given that each defendant's liability is limited to $50,000, the factual question of the exact amount still owed is not material and need not be decided.

## IV. Conclusion

The court finds that there are no genuine issues of material fact. The court has rejected each of the affirmative defenses put for-ward by the defendants. As a result, plaintiff deserves summary judgment on its claim to enforce the personal guaranties.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment is **GRANTED**. Defendants' motion for summary judgment is **DENIED**. Judgment will be entered in favor of the plaintiff.

**SO ORDERED.**

### JUDGMENT

This action came before the Court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED** that defendant Paul Brown pay plaintiff the sum of fifty thousand dollars ($50,000.00).

**IT IS FURTHER ORDERED AND ADJUDGED** that defendant Richard Bingham pay plaintiff the sum of fifty thousand dollars ($50,000.00).

---

**3.** The SBA says that $256,571.00 plus earned interest of $3,440.43 was recovered by the Bank from the collateral proceeds. Of this amount, the Bank deducted $60,944.82 in satisfaction of the loan originally made in 1972. The Bank then apportioned $17,447.92 of the total $56,700 in expenses and fees towards the SBA note. The $17,447.92 was added to the total indebtedness of the note. Thus, according to the SBA, approximately $181,000 was used to pay off a portion of the still outstanding principal.